UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
Rodney Rollins,

        *Plaintiff*,

     v.

New York State Division of Parole, N.Y.S. Parole
Officer John White, N.Y.S. Parole Officer Barry
Davis, N.Y.S. Parole Officer Roosevelt Green,
N.Y.S. Parole Officer James Contino,


        *Defendants*.
----------------------------------------------------------X

<u>MEMORANDUM & ORDER</u>
03-CV-5952 (NGG) (RLM)


**NOT FOR PUBLICATION**

GARAUFIS, United States District Judge.

        In this action, the Plaintiff brings suit against the New York State Division of Parole and several individually named New York State Parole Officers for claims arising out of his supervision by the Division of Parole from 1994 through 2002. The Plaintiff brings eight causes of action pursuant to 42 U.S.C. §§ 1983 and 1985 and New York common law for alleged violations of his federal and state constitutional rights.

        At this time, the court considers the Defendants' Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Defendants' motion is granted.

## I.    Plaintiff's Failure to Comply with Local Rule 56.1

        Before discussing the facts of this case, there is a preliminary issue regarding Plaintiff's failure to comply with Local Rule 56.1 that must be addressed. Rule 56.1 of the Local Rules of the United States District Court for the Eastern District of New York, entitled "Statements of Material Facts on Motion for Summary Judgment," is as follows:

a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.

(b) The papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.

(c) Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.

(d) Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e).

E.D.N.Y. Civ. R. 56.1.  Under Rule 56.1, the non-movant has an obligation to assist the court in deciding the motion for summary judgment by providing a counter-statement of material facts in numbered paragraphs that directly respond to the moving party's statement of material facts.  Furthermore, each statement of fact offered by the opposing party as material and disputed must be followed by a supporting citation to admissible evidence in the record.  The non-movant is also entitled under Rule 56.1(b) to submit – in addition to the counter-statement of facts corresponding to the movant's facts – his own separate statement of numbered paragraphs containing facts alleged to be in dispute.  However, "[t]he non-movant, *particularly if represented by counsel*, should not leave it to the Court to cull from this separate statement the pieces of evidence which would support the contentions of the non-movant asserted in its paragraph-by-paragraph response without citation."  Gallimore-Wright v. Long Island R.R. Co., 354 F.Supp.2d 478, 483 (S.D.N.Y. 2005) (internal citation omitted) (emphasis added).

Here, the Defendants correctly submitted with their Notice of Motion Defendants' 56.1 Statement, which contained thirty-eight numbered paragraphs of facts alleged to be material and undisputed, each followed by a citation to admissible evidence in the record.[1] See Defs.' 56.1 Statement. The Plaintiff, in response, submitted an Affidavit with twenty-two numbered paragraphs that do not correspond to the Defendants' 56.1 Statement, and none of which are followed by a citation to evidence in the record. See Pl.'s Ex. A.

The Plaintiff, who notably is represented by counsel, has unquestionably failed to comply with subsections (b) and (d) of Local Rule 56.1. Therefore, in accordance with Rule 56.1(c), the court deems admitted all the material facts set forth in Defendants' 56.1 Statement. See Brown v. United States of America, 2005 WL 1503921 at *2 (E.D.N.Y. June 24, 2005) (Glasser, J.); Gallimore, 354 F.Supp.2d at 483; see also Amnesty America v. Town of West Hartford, 288 F.3d 467, 471 (2d Cir. 2002) (stating that the existence of a local rule constitutes notice such that imposition of a sanction for failing to comply with a citation requirement is permissible).

## II.    Facts

The facts relevant to the Motion for Summary Judgment are as follows. On August 8, 1989, after being convicted in New York State Supreme Court of Manslaughter in the First Degree, the Plaintiff was sentenced to a prison term of five to fifteen years. (See Declaration of John White ("White Decl.") ¶ 4; White Ex. C[2].) Plaintiff was released on parole on February 2,

---

[1] The Defendants also submitted Defendants' Reply Counterstatement to Alleged Issues of Material Fact, in which they pointed out that Plaintiff failed to submit a Rule 56.1 Counterstatement.

[2] Attached to their Notice of Motion, Defendants submitted Declarations of Defendants Barry Davis, John White, and Roosevelt Green. To each declaration, exhibits have been annexed. This Memorandum & Order will refer to exhibits by a Defendant's name and exhibit

1994, for supervision by The New York State Division of Parole ("Parole") until the expiration of his sentence on January 18, 2004. (See White Ex. A.) On or about December 1, 1998, the Plaintiff's case was transferred to defendant Parole Officer John White ("White") of Parole's Special Offender Unit for Parole to maintain intensive supervision of the Plaintiff. (White Decl. ¶ 3.) When White inherited the Plaintiff's case, he was alerted to an outstanding issue regarding the Plaintiff's prior supervision. Specifically, White was made aware that the Plaintiff claimed to be a computer programmer and had represented significant sources of income to his prior parole officers, but the extent of his income and the precise sources of it had not been thoroughly scrutinized by prior officers. (Id. at ¶ 4.)

Prior to the Plaintiff's case being transferred to White, a special condition of release had been imposed upon him pursuant to 9 N.Y.C.R.R. § 8003.3, namely that the Plaintiff not operate a motor vehicle without possession of a valid New York State driver's license. (Id.; White Ex. A.) On January 6, 1999, the Plaintiff reported to White for a supervision meeting, at which time White discovered that the Plaintiff had received a speeding ticket while driving out of state and that he had changed his residence without informing Parole. (White Decl. ¶ 5.) In response, White prepared a Violation of Release Report charging the Plaintiff with four violations. (See id.; White Ex. B.) Plaintiff was arrested on January 6, 1999 for these violations. (White Ex. B.) At a preliminary hearing on these charges, held on January 19, 1999, the hearing officer found probable cause to believe that the Plaintiff had changed his residence without informing Parole, a violation of Rule 4 of the rules governing parole. (See White Decl. ¶ 6; White Ex. D.) At the final hearing, held on March 15, 1999, the Plaintiff agreed to plead guilty to leaving the state

letter. For example, "Davis Ex. A" and "Green Ex. A" are two different documents.

without written permission and all other charges were dropped. The Plaintiff was sentenced to six months in prison. (White Decl. ¶ 6; White Ex. E.) The Plaintiff was released from prison on July 6, 1999 and resumed supervision with White. (White Decl. ¶ 6.)

As part of an effort to intensify Parole's supervision over the Plaintiff, on July 28, 1999, White required the Plaintiff to sign a second special condition of release which ordered Plaintiff to obtain a New York State driver's license and prohibited the Plaintiff from associating with a former girlfriend. (White Decl. ¶ 7; White Ex. F.) In addition, White began to more closely monitor the Plaintiff's financial affairs. White was aware that Plaintiff claimed to own a computer consulting business, and that the Plaintiff had provided Parole with a number of timesheets reflecting hours worked. However, Parole had made no official inquiry into the Plaintiff's compliance with tax laws. In September 1999, White directed the Plaintiff to submit proof of his tax payments. (White Decl. ¶ 7.)

On October 29, 1999, the Plaintiff reported for a supervision meeting with White and submitted a photocopy of a check dated "10/24/99" drawn on the account of "Rodney Rollins DBA Paladine Consulting" made out to the Department of Treasury in the amount of $13,509.50. (See White Decl. ¶ 8; White Ex. M.) On the face of the check was written "½ estimated tax '99." A photocopy of an Internal Revenue Service 1099 form with the same amount indicated that payment was attached. (Id.) The Plaintiff informed White that the original check had been sent to the IRS; White directed the Plaintiff to produce the original check once it cleared. (Id.)

On April 19, 2000, the Plaintiff was again taken into custody by White for violating the conditions of his release following White's observation of him driving with a suspended New

5

York license.  (See White Decl. ¶ 9; White Ex. G.)  Preliminary and final hearings were held on

May 2, 2000 and July 14, 2000, respectively, and the Plaintiff was found guilty of operating a

motor vehicle with a void Connecticut license.  (White Decl. ¶ 10, 11; White Ex. J.)  The

plaintiff was sent to prison and was released on September 6, 2000, at which time he resumed

supervision with White.  (White Decl. ¶ 11; White Ex. J.)

On or about October of 2000, White and his immediate supervisor, defendant Senior

Parole Officer James Contino ("Contino") contacted Parole's Bureau of Special Services

("BSS"), the investigative arm of Parole, to request that BSS conduct an investigation of the time

sheets and pay stubs the Plaintiff had submitted to Parole as proof of income.  (See White Decl. ¶

12.)  That October, defendant Parole Officer Roosevelt Green ("Green"), a BSS officer, was

directed to conduct an investigation into whether the Plaintiff's 10/24/99 check to the IRS had

ever cleared. (See Declaration of Roosevelt Green ("Green Decl.") ¶ 3.)  In November, Green

was directed to expand his investigation to gain a "complete picture of plaintiff's financial

affairs" and to verify the truth of the Plaintiff's submissions to his parole officers.  (Green Decl.

¶ 4.)

On February 14, 2001, White gave the Plaintiff a financial information questionnaire and

directed the Plaintiff that it was to be completed and returned at their next scheduled meeting.

(White Decl. ¶ 13.)  When Plaintiff reported for his next supervision meeting on March 14, 2001

he presented a largely incomplete form.  (Id. at ¶ 14; White Ex. O.)  While questioning the

Plaintiff as to why the form was not completed in full, the Plaintiff became "belligerent" and

White placed the Plaintiff in handcuffs.  (Id.)  White requested that Contino issue a warrant for

the Plaintiff's arrest, but Contino declined to do so because of BSS's ongoing investigation of

the Plaintiff.  (Id.)  White then removed the handcuffs and released the Plaintiff.  (Id.)

On March 15, 2001, the Plaintiff filed a complaint with the New York City Civilian Complaint Review Board ("CCRB") alleging that White assaulted him during the March 14, 2001 office report.  On March 26, 2001, CCRB referred the matter to Parole's Office of Professional Responsibility ("OPR") for investigation.  (See Declaration of Gabriel Hertzberg in Support of Defendants' Motion for Summary Judgment ("Hertzberg Decl.") Ex. B.)  OPR investigators interviewed the Plaintiff, Contino, and Defendant Parole Officer Barry Davis ("Davis"), who was White's partner and was present at the time of the alleged incident.  OPR concluded that the Plaintiff's allegations were unfounded and that White had used minimal force to temporarily detain the Plaintiff.  (Id.)

In March 2001, White was transferred out of the Brooklyn Parole office; Davis was assigned to assume supervision of the Plaintiff.  (White Decl. ¶ 15; Declaration of Barry Davis ("Davis Decl.") ¶ 3.)  On August 23, 2001, BSS subpoenaed information from the Plaintiff regarding the terms of his employment with Paladine, the computer consulting company he allegedly owned and operated.  (Green Decl. ¶ 6.)  The Plaintiff did not respond to this subpoena.  (Green Decl. ¶ 8.)  At the conclusion of Green's investigation, BSS summarized its findings in a memorandum to Davis's supervisor.  (See Green Decl. ¶ 9, Green Ex. E.)  The memorandum concluded that Plaintiff's reported income was inconsistent with his lifestyle and noted the Plaintiff's failure to comply with a BSS subpoena.  (See Green Ex. E.)

In April 2002, Davis gave the Plaintiff a second copy of the financial questionnaire and again directed him to complete it.  (Davis Decl. ¶ 6.)  Again, the Plaintiff returned an incomplete form.  (See Davis Ex. A.)  In August 2002, Davis submitted a Violation of Release Report

charging the Plaintiff with thirteen violations of conditions of his parole. Plaintiff was arrested

and taken into custody on August 7, 2002. (Davis Decl. ¶ 7; Davis Ex. B.) A preliminary

hearing before Administrative Law Judge ("ALJ") Una Tapper commenced on August 20, 2002.

(See Hertzberg Decl. Ex. C.) At this hearing, evidence was presented concerning, among others,

charges that the Plaintiff violated the conditions of his parole by making misrepresentations in

the February 2001 and April 2002 financial questionnaires. (See Hertzberg Decl. Ex. C; Davis

Ex. B.) Ultimately, the hearing was adjourned to allow Parole to produce additional evidence;

the hearing reconvened on August 22, 2002 before Hearing Officer Chandra Perry-Patterson.

(See Hertzberg Decl. Ex. D.) Based on evidence presented by Parole, Perry-Patterson found

probable cause to believe that the Plaintiff was untruthful in his responses to the February 2001

financial questionnaire. (Id.)

A final hearing on the charges was held over three days in January 2003 before ALJ

Terry Saunders. (See Hertzberg Decl. Ex. E,F,G.) On June 4, 2003, a final decision was issued.

The decision found that, with respect to the Plaintiff's income, Parole's investigation determined

that the Plaintiff was being paid large of sums of money "for various services to apparently

legitimate companies for his computer skills." (Hertzberg Decl. Ex. H.) With regard to the

financial questionnaires, the ALJ found the following: "The evidence shows that the

questionnaires were not specific and like many financial question[naires] subject to

interpretation. . . At different points the releasee referred the PO to his accountant but the

Division [Parole] declined. . . It does appear releasee made a dummy check to IRS to relieve

pressure placed on him by PO however again there is no evidence that he failed to pay his

income tax." (Id.) In sum, the ALJ determined that Parole failed to prove the Plaintiff had lied

and failed to prove that there had been a violation of parole conditions in an important respect. The Plaintiff was found not guilty and released from custody.  (Id.)

In November 2003, the Plaintiff filed the instant action against Parole and Officers White, Davis, Green and Contino alleging federal constitutional violations and state common law claims.

## III.    Discussion

### A.    Standard for Summary Judgment

Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party carries the burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In deciding a motion for summary judgment, the court must construe the facts in the light most favorable to the non-moving party, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and all reasonable inferences and ambiguities must be resolved against the non-moving party.  Flanigan v. Gen. Elec. Co., 242 F.3d 78, 83 (2nd Cir. 2001).  Where there are no such genuine issues of fact, and all facts, inferences, and ambiguities are construed in favor of the non-moving party, summary judgment for the moving party is appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Mack v. Otis Elevator Co., 326 F.3d 116, 119-20 (2d Cir. 2003) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

As discussed above, in light of the Plaintiff's failure to comply with Local Rule 56.1, all facts submitted in Defendants' 56.1 Statement of Facts are deemed admitted for the purposes of

this motion.  See Brown, 2005 WL 1503921 at *2; Gallimore, 354 F.Supp.2d at 483.  In other words, facts submitted by the Defendants in support of their motion for summary judgment are undisputed for the purposes of determining if the Defendants are entitled to judgment as a matter of law.  The facts outlined above, however, will be interpreted in the light most favorable to the Plaintiff, with all reasonable inferences therefrom made in the Plaintiff's favor.

**B.    The Plaintiff's Section 1983 False Arrest and Malicious Prosecution Claims**

**1.    Claims arising from the Plaintiff's 1999 and 2000 arrests**

The statute of limitations applicable in a 42 U.S.C. § 1983 claim brought in federal court is that of the state in which the claim arose.  See Eagleston v. Guido, 41 F.3d 865, 871 (2d. Cir. 1994).  Therefore, the Plaintiff's Section 1983 claims for false arrest and malicious prosecution are subject to New York's three year statute of limitations.  See id.  Federal law, however, applies with respect to when the claim accrued, and thus, the Plaintiff's section 1983 claims accrued "when the plaintiff [knew] or [had] reason to know of the harm [he suffered.]"  Id.  For a false arrest or malicious prosecution, accrual occurs at the time of the alleged false arrest. Singleton v. New York, 632 F.2d 185, 191 (2d. Cir. 1980).

The Plaintiff was arrested in January 1999 and again on April 19, 2000.  (See Pl.'s Dep. at 128, 151-52.)  This action commenced on November 24, 2003, the date of the filing of the complaint.  Accordingly, claims arising from the 1999 and 2000 arrests are time-barred.  Indeed, the Plaintiff agrees with this determination and asserts that he has raised no claims related to the 1999 and 2000 arrests.  (See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp.") at 9.)  To the extent that Plaintiff has alleged Section 1983 claims arising from his 1999 and 2000 arrests, Defendants' motion for summary

judgment as to those claims is granted.

### 2. Liability of Officers Davis, Green and White on claims arising from the Plaintiff's 2002 Arrest

Defendants Davis, Green and White argue that summary judgment on the Plaintiff's section 1983 false arrest and malicious prosecution claims arising from the 2002 arrest is warranted because they are entitled to qualified immunity on these claims. (See Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' Mot.") at 15.) The Plaintiff counters that the Defendants are not entitled to qualified immunity because they lacked even "arguable probable cause" to arrest the Plaintiff. See Escalera v. Lunn, 361 F.3d 737, 744 (2d Cir. 2004).

As a general matter, "[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause." Singer v. Fulton County Sheriff, 63 F.3d 110, 118-19 (2d Cir. 1995). In the qualified immunity context, the test is even "more favorable to the officers than the one for probable cause." Escalera, 361 F.3d at 743. Even in the absence of a finding of probable cause, "an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest." Id. (internal citations omitted).

Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed; or (b) officers of reasonable competence could disagree on whether the probable cause test was met. Id. (internal citations omitted). Moreover, the Supreme Court has recently confirmed that an arrest can be sufficiently supported by a finding of probable cause on any grounds, even if the ultimate prosecution rests on different grounds. See Devenpeck v. Alford, 125 S.Ct. 588, 593-94 (U.S. 2004) ("[The arresting officer's] subjective

reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.").

Defendants contend that there was probable cause to arrest the Plaintiff based on Plaintiff's failure to comply with the condition of his release requiring that he reply truthfully to all inquiries by his parole officer. In particular, the Defendants allege that the Plaintiff was misleading and untruthful about his income and general finances. In support of summary judgment, the Defendants offer three discrete bases for a finding of probable cause as a matter of law. This M&O will first address whether these facts independently provided Parole with probable cause to arrest the Plaintiff. Second, the opinion will address whether, considering the totality of the circumstances, there existed arguable probable cause entitling the defendants to qualified immunity and therefore summary judgment in their favor on these claims.

### a. Probable Cause

First, the Defendants claim that the Plaintiff submitted a "phony IRS check" to Officer White. (See Defs.' Mot. at 16-17.) The Defendants' argument is that the Plaintiff provided a copy of a check made out to the IRS to White under the false representation that it had been sent to the IRS as payment for the Plaintiff's 1999 tax liability. (See id.) Rule 5 of the conditions of his release required the Plaintiff to "reply promptly, fully and truthfully to any inquiry . . . by [his] parole officer."

Reviewing the facts in the light most favorable to the Plaintiff, the court cannot, as a matter of undisputed fact, find that the Plaintiff submitted a "phony" check to White. The Plaintiff provided White with a copy of a check dated 10/24/99 and represented to White that this was payment to the IRS for one-half of his 1999 taxes. White requested a copy of the check

12

once it cleared, which was never provided. Construing the facts in the light most favorable to the Plaintiff and making all reasonable inferences therefrom in the Plaintiff's favor, it cannot be said with certainty that the Plaintiff lied to Officer White regarding this check. It is reasonable to infer that the Plaintiff intended to mail this check to the IRS, but for some legitimate reason did not. He did not represent to White that the check had already cleared. Therefore, as a matter of law, this photocopied check alone did not provide the Defendants with probable cause to believe the Plaintiff violated the terms of his release.

The second fact offered by the Defendants in support of the existence of probable cause as a matter of law underlying the Plaintiff's 2002 arrest is the Plaintiff's failure to respond to an August 23, 2001 subpoena duces tecum issued by Parole directing the Plaintiff to produce certain documents and records regarding Paladine. (See Defs.' Mot. at 17.) The Plaintiff failed to respond to the subpoena. (Green Decl. ¶¶ 6, 8.) The Plaintiff argues that he was under no obligation to respond as the subpoenas were improperly served. (See Pl.'s Opp. at 15.) It is not disputed that Officer Roosevelt Green sent a subpoena to the Plaintiff through the mail. (See Green Dep. at 59-60.) Green admitted in his deposition that he had no training with respect to the proper issuance of subpoenas and that he had never read the text of the laws and rules referenced on the subpoena form indicating the statutory authority under which the subpoenas were issued. (See Green Dep. at 10-13.) Green further admitted that he mailed and faxed other subpoenas to various banks and business associates of the Plaintiff's and Paladine's located outside of the State of New York despite knowing that the subpoenas had no power to force compliance upon persons and corporations outside of New York State. (Id. at 17.)

Whether the Plaintiff was obligated under the terms of his parole to respond to

improperly served subpoenas is unclear. Indeed, neither the Plaintiff nor the Defendants have offered persuasive case law to support their positions on this issue, and the court has found little as well.[3] It is undisputed, however, that the Plaintiff did regularly provide Green and the Division of Parole with information concerning his finances. (See e.g., Green Dep. at 30-32.) Given that Plaintiff, by his own testimony and that of the Defendants, willingly produced evidence of his earnings and employment when requested, the court is reluctant to reward Officer Green by finding probable cause as a matter of law based on Green's misleading and improper issuance of subpoenas. Therefore, the court finds that the Plaintiff's failure to reply to the subpoena issued by BSS does not, in and of itself, provide a basis for finding probable cause as a matter of law.

The final fact asserted by Defendants as a basis for finding probable cause as a matter of law with respect to the Plaintiff's August 2002 arrest for violation of his parole is the Plaintiff's alleged failure to truthfully and fully answer two financial questionnaires given to him by Parole in the course of Parole's investigation into his finances. (See Defs.' Mot. at 17.) On February 14, 2001, the Plaintiff was given a financial questionnaire to be filled out and returned at his next scheduled parole meeting. (White Decl. ¶ 13.) At that meeting, the Plaintiff presented a partly

---

[3] The case of O'Brien v. Alexander, 101 F.3d 1479 (2d Cir. 1996), cited by the Defendants in support of their summary judgment motion for the proposition that "Plaintiff did not have the right to refuse to answer Parole's inquiries because he believed the vehicle of inquiry (the subpoenas) was improper," does not prove as much. There, defendants were granted summary judgment on a malicious prosecution claim, and the opinion referenced "alleged improper use of subpoenas." See O'Brien, 101 F.3d at 1483. However, there is nothing to suggest that the alleged improper subpoenas had any bearing on a finding of probable cause. In fact, the circuit court affirmed summary judgment on the malicious prosecution claim on grounds entirely different from lack of probable cause on the part of the defendants. See id. at 1484-5.

completed questionnaire, and became belligerent when questioned as to its incompleteness. (White Decl. ¶ 13; White Ex. O.)  A second copy of the questionnaire was given to the Plaintiff in March of 2001; the Plaintiff similarly returned an incomplete form to Parole on April 24, 2002.  (Pl.'s Dep. at 175; Davis Decl. ¶ 6; Davis Ex. A.)

The Plaintiff claims that at the time he turned in the questionnaires, he explained to his parole officers that he could not fully and accurately answer the questions as stated because his financial situation was complicated by the line of work in which he was involved and the manner in which he was compensated for his work.  (See Pl.'s Dep. at 183-5.)  The Plaintiff also testified that he offered to procure an accountant at his own expense to provide to Parole "a complete independent accounting of what [his] true net worth was."  (Pl.'s Dep. at 183-4.)  He claims he deliberately did not sign the two questionnaires, instead writing *"I respectfully decline to attest to anything under penalty of perjury"* on one, and "*signature declined*" on the other, because he knew the forms did not accurately reflect his finances.  (See Pl.'s Dep. at 185.)

While it may well be that the Plaintiff technically did not respond "fully" – as required by Rule 5 of his release conditions – to the financial questionnaire, this technicality should not be the basis for a finding of probable cause.  Given that the defendants were already in possession of countless documents and pay stubs which informed Parole of the Plaintiff's considerable legitimate earnings, and that the Plaintiff offered to assist Parole in obtaining a more complete assessment of his finances, this court cannot find that the questionnaires gave the defendants probable cause as a matter of law to arrest the Plaintiff.  Indeed, this conclusion is in line with the findings of ALJ Terry Saunders, who presided over the final hearing on the Plaintiff's violation hearing, and found the Plaintiff not guilty of violating the conditions of his release in

an important respect.  (<u>See</u> Hertzberg Decl. Ex. H.)

      **b.**      **Arguable probable cause**

Although I find these three discrete events alone not to provide a basis for finding

probable cause as a matter of law, the Defendants will be afforded qualified immunity, even in

the absence of a finding of probable cause, "if [they] can establish that there was 'arguable

probable cause' to arrest." <u>Escalera</u>, 361 F.3d at 743.  If it was objectively reasonable for the

Defendants to believe that probable cause existed, or if officers of reasonable competence could

disagree on whether the probable cause test was met, then there exists arguable probable cause.

<u>Id.</u>; <u>see also</u>, <u>Martinez v. Simonetti</u>, 202 F.3d 625, 634 (2d Cir. 2000) ("[W]e have said that in

the context of a qualified immunity defense to an allegation of false arrest, the defending officer

need only show 'arguable' probable cause.").  In deciding whether arguable probable cause

exists to effect an arrest, the Court looks to the totality of the circumstances.  <u>Gagne v. DeMarco</u>

281 F.Supp.2d 390, 396 (D.Conn. 2003); <u>see also</u> <u>Bernard v. United States</u>, 25 F.3d 98, 102 (2d

Cir.1994).  Furthermore, "[e]ven on summary judgment, where all facts must be viewed in the

light most favorable to the non-moving party, for the purpose of qualified immunity and arguable

probable cause, police officers are entitled to draw reasonable inferences from the facts they

possess at the time of a seizure based on their own experiences." <u>Cerrone v. Brown</u>, 246 F.3d

194, 203 (2d Cir. 2001).

Here, the facts in totality demonstrate that it was objectively reasonable for the

Defendants to believe that probable cause existed.  Although the Plaintiff may not have outright

lied about his check to the IRS, an officer of reasonable competence could have believed that the

Plaintiff had falsely represented that he had sent the check as payment for his taxes.  This, in

conjunction with the Plaintiff's failure to respond to subpoenas requesting financial information and his deliberate efforts not to complete a financial questionnaire that was twice given to him, and Parole's general awareness that the Plaintiff seemed to maintain a lifestyle inconsistent with his reported income, provide the basis for a finding of "arguable" probable cause. As the Second Circuit has stated, "the analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause." Escalera, 361 F.3d at 743.

It cannot be said that it was objectively unreasonable for the Plaintiff's parole officers to conclude, given the totality of the circumstances, that the Plaintiff was in violation of his obligation to respond *promptly, fully and truthfully* to all inquiries by Parole. Therefore, arguable probable cause existed to arrest the Plaintiff on August 7, 2002, and the Defendants are entitled to qualified immunity on this charge. The motion for summary judgment of Defendants as to this claim is hereby granted.

### 3. Liability of Officer Contino on claims arising from the Plaintiff's 2002 Arrest

Defendant Contino argues that he is entitled to absolute immunity with respect to the Plaintiff's 2002 arrest because his only involvement in the arrest was signing the arrest warrant. Davis prepared the August 2002 violation of release report which recommended that the Plaintiff be arrested, and on this recommendation Contino issued the arrest warrant. (See Davis Decl. ¶ 7; Davis Ex. B.)

Parole Officers are entitled to absolute immunity for acts that are "prosecutorial in nature." Scotto v. Almenas, 143 F.3d 105, 111 (2d Cir. 1998). In this circuit, a parole officer's decision to sign an arrest warrant based on the recommendation of another officer has been deemed prosecutorial in nature. Id. at 113. Scotto is factually analogous to the present case.

17

There, the Second Circuit held that a parole officer who signed an arrest warrant on the recommendation of another officer was entitled to absolute immunity. See Scotto, 143 F.3d at 113 ("Wegman's discretionary decision to sign the arrest warrant based on Almenas's recommendation initiated the parole revocation proceedings and was prosecutorial in nature. Therefore Wegman is entitled to absolute immunity.") (internal citations omitted).

The Plaintiff further alleges that section 1983 liability against Contino can be grounded in his gross negligence in the supervision of officers White and Davis. (See Pl.'s Opp. at 19-20). Scotto also forecloses this claim. There, the Second Circuit specifically held that a supervisory parole officer cannot be subjected to § 1983 damages liability based on *respondeat superior* or on his failure to supervise" a parole officer in his charge." Scotto, 143 F.3d at 113.

Thus, to the extent that Plaintiff asserts a section 1983 claim against Contino arising from the Plaintiff's 2002 arrest, Contino is absolutely immune[4] and Defendant's Motion for Summary Judgment on this claim is granted.

## C. The Plaintiff's Substantive and Procedural Due Process Claims

The Plaintiff also claims that his substantive and procedural due process rights were violated by the Defendants in connection with their efforts to have the August 20, 2002 preliminary hearing before ALJ Una Tapper adjourned to August 22, 2002, and their subsequent conduct at the August 22nd hearing. The Plaintiff alleges that at the initial hearing the Defendants falsely claimed that they possessed additional documents back at their office, and

---

[4] The Plaintiff argues that he seeks to hold Contino liable not under section 1983, but rather under section 1985 for the alleged conspiracy among the Defendants to violate the Plaintiff's civil rights. This claim will be addressed separately. See discussion infra part III.D.

that ALJ Tapper adjourned the hearing only to allow the Defendants to retrieve those documents and to present them in support of their charges at the next hearing. (See Compl. ¶¶ 44-51.) The Plaintiff asserts that the Defendants requested the adjournment under the false pretenses of needing more evidence, when in fact they only wanted a different judge who might be more favorable to Parole to hear the case. (See Pl.'s Opp. at 24.) The Plaintiff's claim rests on the fact that when the hearing reconvened two days later – before a different judge, this time Hearing Officer Chandra Perry-Patterson – the Defendants presented evidence that had just been obtained that day. Further, the Plaintiff alleges that at the second hearing, the Defendants misled the hearing officer by not informing her of the limited reason for the adjournment, and of the fact that the evidence initially claimed to be "back at the office" was actually newly acquired by the Defendants. (See Pl.'s Opp. at 25.)

The first step in substantive due process analysis is to identify the constitutional right at stake. See Collins v. City of Harker Heights, 503 U.S. 115 (1992). In Collins, the Supreme Court explained:

> As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field. It is important, therefore, to focus on the allegations in the complaint to determine how [plaintiff] describes the constitutional right at stake and what the [defendants] allegedly did to deprive [plaintiff] of that right.

Id. at 125. In his brief in opposition to summary judgment, the Plaintiff submits that "the right to have one neutral fact-finder decide his case is a substantial right, the failure of which has due process implications." (Pl.'s Opp. at 23.) Contrary to the Plaintiff's submission, I hold that the

right to have the same hearing officer who presided over an initial parole revocation proceeding preside over the adjourned hearing (that is conducted anew) is not a protected liberty interest within the meaning of the Due Process Clause. Furthermore, even were I to decide that the Plaintiff has established that a protected liberty interest is at stake here, the conduct of the Defendants is not so egregious that it "shocks the conscience." See Rochin v. California, 342 U.S. 165, 172 (1952) (offering "shocks the conscience" standard for substantive due process analysis). Therefore the Plaintiff's substantive due process claim fails. In addition, the Plaintiff was afforded all the process he was due; there has been no procedural due process violation committed by the Defendants.

### 1. Substantive Due Process

The court finds no compelling reason to hold that the Plaintiff's interest in having a single officer preside over his revocation hearing is a liberty interest affording him substantive due process rights. The Plaintiff has put forth no case law to demonstrate that his position is correct, and the court has found no case law that strongly supports his position. Under the New York statutory and regulatory scheme governing parole revocation, within three days of being arrested on a parole violation warrant, a parolee is entitled to notice of the charges against him and of the date of a preliminary hearing on the charges to be held no later than 15 days from the arrest. See N.Y. Exec. L. § 259(i); 9 N.Y.C.R.R. §§ 8005.3, 8005.5. Under the statute and related regulations, a parolee at his preliminary hearing has a qualified right to counsel, a right to present evidence, and a right to cross-examine any witnesses who testify on behalf of Parole. See generally, N.Y. Exec. L. § 259(i); 9 N.Y.C.R.R. §§ 8005. There is no mention in the statutory provisions or regulations of a right to have a single hearing officer preside over the

entirety of the preliminary hearing.  Indeed, the hearing officer is explicitly given authority to adjourn hearings.  9 N.Y.C.R.R. § 8005.4(b)(3).

As there is no statutory or regulatory basis for finding a protected liberty interest here, and, given the Supreme Court's directive to only reluctantly expand the concept of substantive due process, I find no reason to do so now in favor of the Plaintiff.  The Plaintiff has failed to show that a liberty interest implicating the Due Process Clause is at stake here.  Cf. Wolff v. McDonnell, 418 U.S. 539, 556-7 (1974) (finding a protected liberty interest in prisoners' right to good-time credit for satisfactory behavior based on state statute); Green v. McCall, 822 F.2d 284, (2d Cir. 1987) (finding that parole grantees have a protected liberty interest in their early effective release date arising from statutes and regulations governing parole rescission authority); Lanier v. Fair, 876 F.2d 243, 246 (1st Cir. 1989) (finding that inmate had a liberty interest in remaining at halfway house arising from state regulations and administrative manuals).

The Plaintiff's argument that the Defendants deliberately misled ALJ Tapper into granting an adjournment by lying about having evidence to support their charges at the office does not enhance the Plaintiff's due process argument.  The case of Bishop v. Wood, 426 U.S. 341 (1976), provides guidance on this point.  In Wood, a policeman brought suit alleging a due process violation arising from his termination of employment as a city police officer.  The petitioner argued that he was a "permanent employee" under a city ordinance, and thus was entitled to a hearing to determine the sufficiency of the cause for his discharge.  The petitioner alleged that the reasons provided as grounds for his discharge were false. The Supreme Court decided two issues: first, whether the petitioner's employment status was a property interest

protected by the Due Process Clause; and second, assuming the explanation for his discharge was false, whether that false explanation deprived him of an interest in liberty protected by due process. Wood, 426 U.S. at 343. With regard to the first question, the Court found that the petitioner's status as an employee was not a property interest because he was in essence an at-will employee. Id. at 347. The Court went on, however, to consider whether the alleged false explanation for his termination violated the petitioner's due process rights. The petitioner asserted that the false reasons given stigmatized him and severely damaged his reputation in the community. Based on evidence put forth by the petitioner, the Court assumed that "his discharge was a mistake and based on incorrect information." Id. at 348.

The Court first found that, because the reasons given for petitioner's discharge were communicated to him orally and in private, they could not form the basis for his reputational harm claim, notwithstanding the truth or falsity of the reasons given:

> Even [if the reasons given for his discharge were false], the reasons stated to him in private had no different impact on his reputation than if they had been true. . . . The truth or falsity of the [employer's] statement determines whether or not his decision to discharge the petitioner was correct or prudent, but neither enhances nor diminishes petitioner's claim that his constitutionally protected interest in liberty has been impaired.

Id. at 348-9. Indeed, in a footnote, the Court expanded by stating that the result would be no different even if the employer has "deliberately lied." Id. at n.13. The Court concluded: "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are daily made by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs." Id. at 349-50.

Although there are factual differences between the present case and Wood, I find the

reasoning of Wood to be instructive. That there may have been bad faith on the part of the Defendants in seeking an adjournment has no bearing on whether or not the Plaintiff had a liberty interest protected by the Due Process Clause in having his case heard before ALJ Tapper on adjournment.

However, assuming *arguendo*, I did find a liberty interest at stake here, the Plaintiff's substantive due process claim still will not survive summary judgment. "Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.'" Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (quoting Bishop v. Wood, 426 U.S. 341, 350 (1976)). The record reflects that the Defendants sought an adjournment to obtain evidence they claimed was in their office but that they procured this evidence – certain bank records – by subpoena on the day of the adjournment. Although the Defendants may not have been fully forthright, the conduct alleged here is not of such an outrageous nature that it can be said, as a matter of law, that it shocked the conscience. See United States v. Cuervelo, 949 F.2d 559, 565 (2d Cir. 1991) (substantive due process is violated "if the government's conduct reach[es] a demonstrable level of outrageousness.") (internal quotation and citation omitted).

## 2. Procedural Due Process

The Plaintiff further alleges that his procedural due process rights were violated by the substitution of ALJ Tapper for Hearing Officer Perry-Patterson. (Pl.'s Opp. at 24.) To advance this point, the Plaintiff draws the court's attention to the case of New York v. Thompson, 90 N.Y.2d 615 (N.Y. 1997). The holding of Thompson, however, at best, does not support the Plaintiff's position. In Thompson, a convicted defendant alleged that his due process rights had

been violated by the substitution of the presiding judge with another judge during jury trial. The opinion begins by discussing cases of the late nineteenth-century which held that replacement of a judge mid-trial was – at that time – constitutional error. The opinion then goes on to discuss more recent case and statutory law which permits the substitution of judges. Indeed, the case cites at length Fed. R. Crim. P. 25(a) which codifies when a judge substitution is permissible. Thompson, 90 N.Y.2d at 619-21. Ultimately, in Thompson, the New York Court of Appeals held that the substitution in that case did not warrant a mistrial. Id. at 621-22. Thus, the holding in Thompson does not support the Plaintiff's position.

Furthermore, the Plaintiff's situation is inapposite to the situation in Thompson because when the Plaintiff's hearing reconvened on August 22, 2002, the new judge began the hearing anew. This fact is critical to the due process analysis. The Plaintiff was afforded his full procedural due process rights at the second hearing before Judge Perry-Patterson. The Supreme Court, in the case of Morrissey v. Brewer, 408 U.S. 471 (1972), dictated the process due to a parolee at the preliminary hearing stage who faces revocation of his parole. The Court explained: "What is needed [at the preliminary hearing phase] is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." Morrissey, 408 U.S. at 484. Morrissey requires that, in order to satisfy due process, a parolee be given notice of the charges against him, and the opportunity to appear before a neutral hearing officer at a preliminary revocation hearing within a reasonable amount of time of his arrest. Id. at 487-89. "New York provides procedures for parole revocation that generally satisfy due process." Calhoun v. New York State Div. of Parole Officers, 999 F.2d 647, 652 (2d Cir. 1993).

Here, the Plaintiff does not allege that he was denied notice or the opportunity to be heard within a reasonable amount of time following his arrest. Although ALJ Tapper did hear evidence on the charges at the initial hearing, on August 22, 2002, when the Plaintiff appeared before Hearing Officer Perry-Patterson, a proper hearing was held. There is no evidence in the record to demonstrate that Perry-Patterson's findings were improper in any way. Perry-Patterson was aware of the initial hearing. She determined that ALJ Tapper had foreclosed that additional evidence be heard on charges five and six of the violation, but held a proper hearing on charges eleven and twelve, not relying on any evidence offered at the preliminary hearing and making her findings solely on the evidence presented before her on August 22, 2002. (See Hertzberg Decl. Ex. D at 12-14, 16, 88-9).

Thus, neither the Plaintiff's procedural nor substantive due process rights have been violated by the Defendants.[5] Defendants are granted summary judgment with respect to these claims.

**D.** **The Plaintiff's Section 1985 Conspiracy Claim**

The Plaintiff also alleges that he is entitled to recovery pursuant to 42 U.S.C. § 1985 based on the Defendants' alleged conspiracy to violate his civil rights. In the Complaint, the Plaintiff alleges that "defendant officers Davis, Green and Contino conspired to have the [August 20, 2002 preliminary] hearing adjourned to August 22, 2002 by falsely claiming that there were additional documents back at their office which they would provide in support of their charges."

---

[5] Because the court finds there has been no due process violation, there is no need to reach the issue of absolute or qualified immunity of the Defendants for their conduct in connection with the Plaintiff's preliminary hearing. The Plaintiff concedes, however, that Davis is entitled to absolute immunity because he served as prosecutor at the preliminary hearing. Scotto, 143 F.3d at 112 (See also Pl.'s Opp. at 26 (conceding as much)).

(Compl. ¶ 25.)

"In order to maintain an action under Section 1985, a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" <u>Webb v. Goord</u>, 340 F.3d 105, 110-11 (2d Cir. 2003) (<u>citing</u> <u>Romer v. Morgenthau</u>, 119 F.Supp.2d 346, 363 (S.D.N.Y.2000)). The Plaintiff has failed to submit evidence to support this claim. The undisputed facts are that the Defendants sought an adjournment to obtain additional evidence to be presented to the hearing officer. Whether this adjournment was sought in good or bad faith, there is no evidence in the record, nor are their disputed issue of material fact, to support the "meeting of the minds" required in a conspiracy claim with respect to the August 22, 2002 adjournment. Accordingly, the Defendants' motion for summary judgment on the Plaintiff's section 1985 claim is granted.

### E.    The Plaintiff's Excessive Force Claim Against Defendant White

The Plaintiff brings an excessive force claim, pursuant to 42 U.S.C. § 1983, against White for the use of force by White in restraining the Plaintiff at his March 14, 2001 supervision meeting. The facts deemed admitted are that Plaintiff reported for the meeting and presented an incomplete financial questionnaire that he had been directed to complete. The Plaintiff became belligerent when questioned as to the incompleteness of the form, and White placed the Plaintiff in handcuffs. When Contino declined to issue an arrest warrant for the Plaintiff, White removed the handcuffs and released him.

The Plaintiff, in his deposition, described the incident as follows: "With my hands handcuffed behind my back and facing a wall [White] reached down with his left hand, pulled up on the handcuffs and then shoved my face into the wall. He then grabbed me by the back of the

collar, spun me around and threw me into a chair that was sitting next to his desk." (Pl.'s Tr. at 177.) When asked to clarify what he meant by "threw you into a chair," the Plaintiff stated it was "very forceful sitting." (Id.) The Plaintiff admitted that he ended up in a sitting position; that his face was not bleeding; that he had "minor bruising, but nothing that required any medical attention; that he had only minor swelling but that he "wasn't in [his] impression seriously injured"; and that he never saw a doctor regarding any injuries he suffered. (Id. at 178-9.) In sum, the Plaintiff readily admitted that he "wasn't severely injured." (Id. at 178.)

In determining whether Defendant White is entitled to summary judgment as a matter of law on this excessive force claim, the court must first determine the proper standard to apply. The Plaintiff urges the court to use the standard set forth in Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973). In Glick, the Second Circuit offered a set of factors to be considered in determining whether a prisoner has made a valid excessive force claim: "In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Glick, 481 F.2d at 1033. Critical to the Plaintiff's argument is that the Glick standard requires consideration of the subjective intent of the officer, i.e. whether the force was used in good faith or in bad faith.

The Defendant asserts, however, that the Glick factors are inapplicable in the present case because Glick applies only to excessive force claims arising under the Due Process Clause. The Defendant argues that the claim brought by the Plaintiff should properly be analyzed as a

Fourth Amendment excessive force claim because the force was used during an arrest.  In

Graham v. Connor, 490 U.S. 386 (1989), the Supreme Court expressly rejected the application of

the Glick substantive due process analysis to *all* excessive force claims.  The Court held:

> We reject this notion that all excessive force claims brought under §
> 1983 are governed by a single generic standard.
>
> \*   \*   \*
>
> Where, as here, the excessive force claim arises *in the context of an
> arrest* or investigatory stop of a free citizen, it is most properly
> characterized as one invoking the protections of the Fourth
> Amendment, which guarantees citizens the right 'to be secure in
> their persons . . .  against unreasonable . . .  seizures' of the person.

Graham, 490 U.S. at 393-4 (emphasis added).  The import of Graham is clear: "*all* claims that

law enforcement officers have used excessive force – deadly or not – in the course of an arrest,

investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth

Amendment and its 'reasonableness' standard, rather than under a 'substantive due process'

approach."  Id. at 395 (emphasis in original).  Under the Fourth Amendment reasonableness

standard, the inquiry is wholly objective and focuses on the totality of the circumstances,

including the severity of the crime at issue, whether the suspect poses an immediate threat to the

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

arrest by flight.  See id. at 396; Tennessee v. Garner, 471 U.S. 1, 8-9 (1985).   Under this test, the

subjective intent of the officer is not a factor to be considered.

Although Graham clearly mandates that the Fourth Amendment analysis apply to a claim

of excessive force during arrest, the Court has not explicitly stated the standard to be used for a

parolee who is arrested for a parole violation and subjected to alleged excessive force during the

arrest or subsequent pre-trial detention period.  This scenario differs from a typical arrest

because the parolee, in a sense, is already a prisoner.  However, based on a review of case law from this circuit and others, I now find that the Fourth Amendment standard is the correct standard to apply to the Plaintiff, a parolee, given that the alleged use of excessive force occurred in the context of an arrest.  See Sloane v. Getz, 2002 WL 31132968 at * 5-6 (S.D.N.Y. Sept. 25, 2002) (J. Cote), vacated on other grounds, 2005 WL2470810 (2d Cir. Oct. 6, 2005) (applying the Fourth Amendment objective reasonableness standard to parolee's claim of excessive force during arrest on a parole violation); see also, People  v. Kimmey, 67 Fed. Appx. 506, 507-8 (10th Cir. 2003) (same); Bishop v. San Quentin State Prison Workplace, 2002 WL 1767416 (N.D. Cal. July 29, 2002) (same).  The Plaintiff's custody status is akin to a pre-trial detainee because the use of force took place prior to his parole revocation hearing.  See Rodriguez v Phillips, 66 F.3d 470, 477 (2d Cir. 1995) (holding that substantive due process protects citizens against excessive force *only in* the "non-seziure, non-prisoner" context); Powell v. Gardner, 891 F.2d 1039, 1044 (2d Cir. 1989) ("[T]he Fourth Amendment probably should be applied at least to the period prior to the time when the person arrested is formally arraigned or formally charged and remains in the custody (sole or joint) of the arresting officer."); Thompson v. Meriden, 1999 WL 301693 at * 5 (D.Conn. April 14, 1999) (interpreting Rodriguez and Powell and holding that a pretrial detainee's post-arrest claim of excessive force be analyzed under the Fourth Amendment).

Having determined that the Fourth Amendment objective reasonableness standard applies, I find that the Plaintiff's excessive force claim fails as a matter of law.  "Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" Maxwell v. City of New York , 380 F.3d 106, 108 (2d Cir.

2004) (citing <u>Graham</u>, 490 U.S. at 397).  "The Fourth Amendment inquiry is an exclusively objective one, and requires consideration of the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight."  <u>Hemphill v. Schott</u>, 141 F.3d 412, 417 (2d Cir. 1998).

Defendant White alleges in his Rule 56.1 Statement of Material Facts that the Plaintiff became "beligerent"; this fact is deemed admitted for the purposes of this motion.  The remainder of the material facts surrounding the Plaintiff's arrest are undisputed: the Plaintiff suffered no serious injury, but only  minor swelling and bruising that did not require medical attention.  In light of the Plaintiff's admission that his injury was <u>de</u> <u>minimis</u>, I find that excessive force was not used by White.  As one court has explained:

> One indicator of the amount of force used is the injury suffered –
> the constitution does not protect against *de minimis* uses of force,
> and a *de minimis* injury often reflects a *de minimis* use of force to
> effectuate the arrest.

<u>Bishop</u>, 2002 WL 1767416 at *4.

In the present case, I find that any force used by the Defendant in restraining the Plaintiff does not reach the level of a constitutional violation, but rather was objectively reasonable given the totality of the circumstances.  <u>See</u> <u>e.g.</u>, <u>Schy v. Vermont,</u> 2 Fed.Appx. 101, 103 (2d Cir. 2001) (no excessive force where plaintiff admitted that handcuffs only left minimal red marks and no medical treatment was needed); <u>Esmont v. City of New York</u>, 371 F.Supp.2d 202, 214 (E.D.N.Y. 2005) (bump on head resulting in headache not excessive force).  Therefore, Defendant White's motion for summary judgment with respect to the Plaintiff's excessive force

claim is granted.

**F.    The Plaintiff's State Law Claims**

Defendants argue, and the Plaintiff has conceded, that alleged state law claims for assault and harassment against the New York State Division of Parole are barred by the Eleventh Amendment.  As a state agency, Parole is sovereignly immune from these claims.  See Jones v. New York State Division of Military and Naval Affairs, 166 F.3d 45, 48 (2d Cir. 1999). Accordingly, Parole's motion for summary judgment is granted with respect to these claims.

The Plaintiff has also asserted state law claims against the individually name defendant parole officers in their individual capacities.  These claims also fail as a matter of law as the parole officers enjoy immunity on these claims under N.Y. Exec. Law. § 259-q.  See Sloane v. Getz, 2001 WL 504879 at *4 (S.D.N.Y. May 10, 2001) ("To the extent plaintiff brings state law claims against defendants for gross negligence, negligent training and supervision, assault, battery, malice, and fraud, they must be dismissed.  Under New York Executive Law § 259-q, an officer or employee of the State Division of Parole may not be sued in his personal capacity.") The individual Defendants' motion for summary judgment on the Plaintiff's pendent state law claims is granted.

**IV.    Conclusion**

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED.


SO ORDERED.


Dated: October 31, 2005                          /s/ Nicholas G. Garaufis____
      Brooklyn, N.Y.                          Nicholas G. Garaufis
                                        United States District Judge